MICHAEL A. SCHAPS (SBN 247423)
LAW OFFICE OF MICHAEL A. SCHAPS
732 Third Street, Suite B
Davis, CA 95616
Telephone:      (530) 238-5111
Facsimile:       (530) 231-2829
mschaps@michaelschaps.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN C. LOWENTHAL, an individual, | Case No.: |
| Plaintiff | |
| vs. | COMPLAINT FOR: |
| QUICKLEGAL, INC., a California corporation; QUICKLEGAL PRACTICE MANAGEMENT, INC.; a California corporation, LAWYERS ON DEMAND, INC., a California corporation; DEREK BLUFORD, an individual; CYRUS ZAL, an individual, RICHARD DELGADO, an individual; and DOES 1 through 100, | 1. Breach of contract;<br>2. Breach of fiduciary duty;<br>3. Unpaid wages, penalties, and interest under California Labor Code §§ 201, 203, 204.2, 218.5, and 218.6;<br>4. Unpaid minimum wages under the Fair Labor Standards Act; and<br>5. Violation of the California Unfair Competition Law |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff JUSTIN C. LOWENTHAL, by and through his attorney, The Schaps Law Office, A.P.C., for his Complaint against defendants QUICKLEGAL, INC., QUICKLEGAL PRACTICE MANAGEMENT, INC., LAWYERS ON DEMAND, INC., DEREK BLUFORD, CYRUS ZAL, RICHARD DELGADO, and DOES 1 through 100 (collectively, "Defendants"), alleges:

1.     Two fundamental principles stand at the heart of this case. First, employers must pay employees the wages they promise. Second, corporations and those who control them must

treat minority shareholders fairly and honestly. Defendants – a set of related corporations and their officers, directors and majority shareholders – brazenly violated both of these principles with respect to Plaintiff JUSTIN C. LOWENTHAL.

## I.   THE PARTIES

2.   Defendants LAWYERS ON DEMAND, INC., QUICKLEGAL, INC., QUICKLEGAL PRACTICE MANAGEMENT, INC., and DOES 1 through 10 (collectively, "QUICKLEGAL ENTITIES") are California corporations engaged in the business of connecting clients to lawyers through the Internet, with an office in San Francisco, California.

3.   On information and belief, defendants DEREK BLUFORD, CYRUS ZAL, and DOES 11 through 20 ("OFFICER DEFENDANTS") are individuals over the age of 18 who served and/or serve as officers and/or managing agents of the QUICKLEGAL ENTITIES.

4.   On information and belief, defendants DEREK BLUFORD, CYRUS ZAL, RICHARD DELGADO, and DOES 21 through 30 ("DIRECTOR DEFENDANTS") are individuals over the age of 18 who served and/or serve as directors of the QUICKLEGAL ENTITIES.

5.   On information and belief, defendants DEREK BLUFORD, CYRUS ZAL, RICHARD DELGADO, and DOES 31 through 70 ("SHAREHOLDER DEFENDANTS") are, or together comprise, the majority shareholders of the QUICKLEGAL ENTITIES.

6.   Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is legally responsible in some manner for the occurrences herein alleged, and that Plaintiff's losses as herein alleged were proximately caused by their unlawful conduct.

7.   On information and belief, each of the Defendants was the alter ego, agent, servant, employee, bailee, licensee, assignee, successor in interest, conspirator, or partner of each of the other Defendants and was acting within the course and scope of said agency, service, employment, bailment, lease, license, assignment, successorship in interest, conspiracy, or

partnership with the knowledge, permission and consent of each of the other Defendants. On information and belief, each of the Defendants ratified or approved the acts of the other Defendants.

8. Plaintiff JUSTIN C. LOWENTHAL is an attorney licensed to practice law in the State of California and is the former in-house General Counsel of defendants LAWYERS ON DEMAND, INC. AND QUICKLEGAL, INC.

## II. JURISDICTION

9. This Court has subject matter jurisdiction over Plaintiff's federal law claim under 28 U.S.C. section 1331 because this claim seeks redress for violations of Plaintiff's federal statutory rights.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. section 1367(a) because these claims are so closely related to Plaintiff's federal claim that they form parts of the same case or controversy under Article III of the United States Constitution.

## III. VENUE

11. Venue is proper in the Northern District of California under 28 U.S.C. section 1391(b) because, among other reasons, at least one defendant resides in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## IV. GENERAL ALLEGATIONS

12. In June and July 2014, LAWYERS ON DEMAND, INC., acting through its President and CEO, DEREK BLUFORD, and its Vice President, CYRUS ZAL, hired and employed Plaintiff to serve as its in-house General Counsel.

13. At the time, LAWYERS ON DEMAND, INC. was a new start-up with limited funds available to pay employee salaries. Accordingly, LAWYERS ON DEMAND, INC., acting through DEREK BLUFORD and CYRUS ZAL, offered Plaintiff stock in LAWYERS ON DEMAND, INC. in lieu of a salary.

14. On July 15, 2014, Plaintiff and LAWYERS ON DEMAND, INC. entered into a written employment agreement ("Employment Agreement"), a true and correct copy of which is attached hereto as Exhibit A and incorporated herein. DEREK BLUFORD and CYRUS ZAL executed the Employment Agreement on behalf of LAWYERS ON DEMAND, INC.

15. Among other terms, the Employment Agreement, which is entitled "Employment Agreement," provides that it is "entered into between Lawyers On Demand, Inc., a California Corporation, or any of its current or future subsidiaries, affiliates, successors or assigns (collectively, 'Employer'), and Justin C. Lowenthal, Esq. ("Employee") . . . ." The Employment Agreement further provides: "WHEREAS, Employer desires to employ Employee part-time, and Employee desires to become employed by Employer part-time, as its General Counsel, on the terms and conditions set forth in this Agreement."

16. The Employment agreement further provides: "Employment shall be deemed to have commenced on July 1, 2014, and shall continue through November 1, 2014 or until earlier terminated by either Employee or Employer in accordance with the terms of this agreement or by law."

17. The Employment Agreement further provides: "Unless the parties agree otherwise in writing, during the employment term Employee shall perform the services he or she is required to perform under this Agreement at places directed by Employer from time to time, although Employee may telecommute from time-to-time in Employee's discretion. Employee acknowledges that he may be required to travel temporarily to other locations on Employer's business."

18. The Employment Agreement further provides: "Employer shall employ Employee as its General Counsel or in such other similar capacity or capacities as Employer may from time to time prescribe. Employee shall functionally serve as Employer's in-house counsel."

19. The Employment Agreement further provides: "Employer shall employ Employee on a part-time basis. During the term of this agreement, Employee shall devote substantial business efforts and time (on a part-time basis) to Employer, but shall be free to maintain or take other employment or engagement contemporaneously."

---
- 4 -
COMPLAINT; DEMAND FOR JURY TRIAL

20. The Employment Agreement further provides: "Employer agrees to transfer to Employee 50,000 shares of Employer's common stock, or the equivalent of 5% of all outstanding shares on a fully-diluted basis, whichever is greater (the 'Shares'). The Shares transferred to Employee pursuant to this Section shall be subject to a vesting schedule for the term of this Agreement, in which the unvested Shares become vested in ¼ monthly increments during the term of this Agreement, with the first ¼ increment becoming vested upon execution of this Agreement. . . . Employee shall have all of the rights of a shareholder with respect to the Shares during the vesting period, including the right to vote and receive payment of dividends. Employee shall receive no other compensation under this Agreement."

21. The Employment Agreement further provides: "Employer reserves the right to terminate this Agreement *only* if Employee (1) willfully breaches or habitually neglects the duties which he is required to perform under the terms of this Agreement, or (2) commits acts of dishonesty, fraud, misrepresentation, or other acts of moral turpitude, that would prevent the effective performance of his duties." (Original emphasis.)

22. The Employment Agreement further provides: "Employer may at its option terminate this Agreement for the reasons stated in this Section by giving written notice of **immediate** termination to employee without prejudice to any other remedy to which Employer may be entitled either at law, in equity, or under this Agreement. The notice of termination required by this Section shall specify the ground for the termination and shall be supported by a statement of all relevant facts." (Original emphasis.)

23. The Employment Agreement further provides: "Employee's employment may only be terminated by employer 'for cause', as specified under this Section."

24. The Employment Agreement further provides: "Employer shall, to the maximum extent permitted by law and its bylaws, indemnify and hold Employee harmless for any acts or decisions made in good faith while performing services for Employer. Employer may pay, subject to its discretion in the circumstances, and consistent with any legal limitations, choose to advance, all expenses, including reasonable attorney fees and costs of court-appointed settlement, actually and necessarily incurred by Employee in connection with the defense of any

action, suit, or proceeding and in connection with any appeal that has been brought against Employee by reason of his or her service as an officer or agent of Employer."

25. The Employment Agreement contains an integration clause.

26. In reliance on the Employment Agreement, Plaintiff performed the duties of in-house General Counsel for LAWYERS ON DEMAND, INC. in July 2014. That month, LAWYERS ON DEMAND, INC. reconstituted itself as QUICKLEGAL, INC. Plaintiff thereafter performed the duties of in-house General Counsel for QUICKLEGAL, INC.

27. Shortly after the Employment Agreement was executed, as a bonus and in order to further incentivize Plaintiff as an employee, Defendants increased Plaintiff's equity stake in LAWYERS ON DEMAND, INC./QUICKLEGAL, INC. from 5% to 7%.

28. On July 28, 2014, Plaintiff emailed DEREK BUFORD as follows: "Since we have a new company, Quicklegal, please confirm for my records that the same terms of my contract with Lawyers On Demand will be fulfilled and honored by Quicklegal, and that we've modified my equity-stake from 5% to 7% fully-diluted shares." DEREK BUFORD replied, "Confirmed!" A true and correct copy of this email correspondence is attached hereto as Exhibit B and incorporated herein.

29. Plaintiff served as LAWYERS ON DEMAND, INC./QUICKLEGAL, INC.'s in-house General Counsel for the full term of the Employment Agreement, devoting significant time and effort to his duties. In fact, Plaintiff went above and beyond the requirements of the Employment Agreement, at the expense of his other work and family responsibilities. Plaintiff frequently worked at the LAWYERS ON DEMAND, INC./QUICKLEGAL, INC. offices, where he was assigned a personal office. Plaintiff also received office keys, a Quicklegal uniform, a parking pass, and business cards bearing the title "General Counsel."

30. At no time during the term of the Employment Agreement did any party seek to terminate the Employment Agreement or express grounds for doing so.

31. On November 1, 2014, Plaintiff's term of employment ended, at which time he finished vesting the last quarter of his 7% equity stake in LAWYERS ON DEMAND, INC./ QUICKLEGAL, INC.

32. On February 9, 2015, Plaintiff emailed DEREK BLUFORD in pertinent part as follows: "By now I'm sure the company has issued share certificates to the shareholders and if so, I insist that I be sent one as well. As you recall, of course, I earned 7% of all outstanding common shares on a fully diluted basis as wages for my work with the company. Please see to it that such is reflected in the ledger and that you or the acting CEO execute and deliver my certificate. I also insist that I be included in general communications, letters, and meeting invites as they pertain to the shareholders. I'll be looking forward to the company's annual financial report as well. It seems you and the company are doing great things. I'm really happy for you."

33. DEREK BLUFORD, on behalf of Defendants, responded to Plaintiff's email by repudiating the Employment Agreement, claiming that Plaintiff had provided "services" as "outside counsel" rather than as an employed in-house attorney. DEREK BLUFORD also suggested that Plaintiff's work on behalf of LAWYERS ON DEMAND, INC./ QUICKLEGAL, INC. had been unsatisfactory – though never during the term of the Employment Agreement had DEREK BLUFORD or any other Defendant (or anyone else, for that matter) suggested to Plaintiff that his work was unsatisfactory.

34. On or about September 3, 2015, Defendants formed a new entity, defendant QUICKLEGAL PRACTICE MANAGEMENT, INC. ("QPMI"). On information and belief, this new entity engages in the same business as LAWYERS ON DEMAND, INC/QUICKLEGAL, INC., uses the same brand name (Quicklegal), the same domain name (www.Quicklegal.com), the same logo, the same social media accounts, the same software, and has and/or had essentially the same board of directors, shareholders, and officers. On information and belief, QPMI is a mere continuation, reconstitution and/or alter ego of LAWYERS ON DEMAND, INC./QUICKLEGAL, INC. and was created for the purpose of defrauding Plaintiff and perhaps others.

35. On January 20, 2015, CYRUS ZAL, on behalf of Defendants, emailed Plaintiff in pertinent part as follows: "As you may know, Quicklegal Inc. has been named as a defendant in a lawsuit and all of its bank account funds are currently frozen pending the outcome of the litigation. Your claimed 7% share in Quicklegal has very little value right now; nevertheless,

Quicklegal does want to resolve your demand for a fair buy-out. There is a separate company called Quicklegal Practice Management, Inc. ('QPMI') that you mention in your email. As you know, your employment agreement was with Quicklegal, Inc., and QPMI was not in existence either at the time you entered into the employment agreement or at the time you had completed your services to Quicklegal, Inc. Thus QPMI is a totally separate entity from Quicklegal that did not exist at any time during your employment with Quicklegal, so you have no claim against QPMI with respect to your employment agreement with Quicklegal."

36. To date, Defendants have not paid Plaintiff any wages for his work for LAWYERS ON DEMAND, INC./QUICKLEGAL, INC., either in the form of share certificates or otherwise. Nor have Defendants permitted Plaintiff to participate as a shareholder in the QUICKLEGAL ENTITIES.

## V.     FIRST CAUSE OF ACTION

### (Breach of Contract)

### (Against the QUICKLEGAL ENTITIES)

37. Plaintiff repeats and incorporates by reference Paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38. On or about July 15, 2014, Plaintiff and LAWYERS ON DEMAND, INC., acting through DEREK BLUFORD and CYRUS ZAL, entered into the Employment Agreement.

39. On or about July 28, 2014, QUICKLEGAL, INC., acting through DEREK BLUFORD, confirmed that it had assumed the obligations of LAWYERS ON DEMAND, INC. and that those obligations had expanded to include paying Plaintiff wages of 7% fully diluted shares in LAWYERS ON DEMAND/QUICKLEGAL, INC.

40. On information and belief, QPMI is the alter ego, fraudulent reincarnation and/or successor in interest of LAWYERS ON DEMAND, INC./QUICKLEGAL INC. As such, QPMI fully shares LAWYERS ON DEMAND, INC./QUICKLEGAL, INC.'s obligations to Plaintiff under the Employment Agreement.

41. Plaintiff fully performed all conditions, covenants and promises required to be performed on his part in accordance with the terms and conditions of the Employment Agreement.

42. The QUICKLEGAL ENTITIES breached, and continue to breach, the Employment Agreement by, among other things, denying Plaintiff's 7% undiluted ownership of the QUICKLEGAL ENTITIES; failing to transfer to Plaintiff his 7% undiluted ownership of the QUICKLEGAL ENTITIES; and depriving Plaintiff of his rights as a shareholder in the QUICKLEGAL ENTITIES, including the right to vote and to receive payment of dividends.

43. As a proximate result of the QUICKLEGAL ENTITIES' breach of the Employment Agreement, Plaintiff has suffered damage in an amount to be proved at trial, but not less than a 7% undiluted equity interest in the QUICKLEGAL ENTITIES or Two Hundred Eighty Thousand Dollars ($280,000), the value of a 7% undiluted equity interest in the QUICKLEGAL ENTITIES as determined by the last known valuation event.

## VI.   SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty)

### (Against OFFICER DEFENDANTS, DIRECTOR DEFENDANTS and SHAREHOLDER DEFENDANTS)

44. Plaintiff repeats and incorporates by reference Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

45. As officers of the QUICKLEGAL ENTITIES, the OFFICER DEFENDANTS have at all relevant times owed a fiduciary duty to Plaintiff as a minority shareholder

46. As directors of the QUICKLEGAL ENTITIES, the DIRECTOR DEFENDANTS have at all relevant times owed a fiduciary duty to Plaintiff as a minority shareholder.

47. As majority shareholders, the SHAREHOLDER DEFENDANTS have at all relevant times owed a fiduciary duty to Plaintiff as a minority shareholder.

48. On information and belief, these defendants breached their fiduciary duties to Plaintiff by, among other things, failing to control the QUICKLEGAL ENTITIES in a fair, just and equitable manner; looting LAWYERS ON DEMAND, INC./QUICKLEGAL, INC.;

dissolving and/or supplanting LAWYERS ON DEMAND, INC./QUICKLEGAL, INC. in bad faith, for the purpose of defrauding Plaintiff and/or squeezing him out; and depriving Plaintiff of his rights as a minority shareholder in the QUICKLEGAL ENTITIES.

49. As a direct and proximate result of these defendants' breaches of fiduciary duty, Plaintiff has suffered and continues to suffer damages in an amount to be proved at trial, but not less than a 7% undiluted equity interest in the QUICKLEGAL ENTITIES or Two Hundred Thousand Dollars ($280,000.00).

50. The aforementioned breaches of fiduciary duty were motivated by oppression, fraud and/or malice in that, on information and belief, these defendants knew they were acting in violation of their fiduciary duties and in violation of Plaintiff's rights as a minority shareholder in the QUICKLEGAL ENTITIES, and they did so for illicit personal gain. Therefore, an award of exemplary and punitive damages is justified.

## VII.   THIRD CAUSE OF ACTION

**(For Unpaid Wages, Penalties, and Interest, California Labor Code sections 201, 203, 204.2, 218.5, and 218.6)**

**(Against the QUICKLEGAL ENTITIES)**

51. Plaintiff repeats and incorporates by reference Paragraphs 1 through 50 of this Complaint as though fully set forth herein.

52. Plaintiff is a former employee of the QUICKLEGAL ENTITIES, whose employment concluded on November 1, 2014.

53. The QUICKLEGAL ENTITIES owed Plaintiff unpaid wages at the conclusion of his employment.

54. After his employment concluded, Plaintiff repeatedly submitted claims to the QUICKLEGAL ENTITIES for his unpaid wages.

55. The QUICKLEGAL ENTITIES willfully failed and continue to fail to pay Plaintiff's claims for wages due to him as set forth above, and as required by Labor Code sections 201 and 204.2.

56. Under Labor Code section 203, the QUICKLEGAL ENTITIES, and each of them, are liable to Plaintiff for a penalty of thirty days' wages.

57. Plaintiff has incurred, and will continue to incur, attorneys' fees in the prosecution of this action and therefore, under Labor Code section 218.5, Plaintiff demands such reasonable attorneys' fees and costs.

58. Under Labor Code section 218.6, Plaintiff demands interest on all due and unpaid wages at the legal rate.

## VIII.   FOURTH CAUSE OF ACTION

### (Violation of the Fair Labor Standards Act ("FLSA"))

### (Against all Defendants)

59. Plaintiff repeats and incorporates by reference Paragraphs 1 through 58 of this Complaint as though fully set forth herein.

60. On information and belief, Defendants, who include the QUICKLEGAL ENTITIES and their officers, directors and majority shareholders, conspired to deprive Plaintiff of the wages to which he is legally entitled.

61. On information and belief, Defendants knowingly, willfully, and intentionally failed to compensate Plaintiff at least the applicable minimum hourly wage, in violation of 29 U.S.C. § 206(a).

62. Due to Defendants' willful violation of the FLSA, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages, and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-judgment interest, all in an amount to be determined at trial.

## IV.   FIFTH CAUSE OF ACTION

### (Violation of the California Unfair Competition Law, Business and Professions Code section 17200 et seq.)

### (against all Defendants)

63. Plaintiff repeats and incorporates by reference Paragraphs 1 through 62 of this Complaint as though fully set forth herein.

64. California Business and Professions Code section 17200 *et seq.*, also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice.

65. Defendants violated the "unfair," "unlawful," and "fraudulent" prongs of the UCL by, among other things: (1) employing Plaintiff without paying him wages; (2) withholding Plaintiff's agreed-upon wages without justification and in violation of law; (3) reconstituting LAWYERS ON DEMAND, INC./QUICKLEGAL, INC. as QPMI for the purpose of defrauding Plaintiff; and (4) breaching their fiduciary duties to Plaintiff.

66. As a direct and proximate result of Defendants' unfair, unlawful and fraudulent business practices, Plaintiff has suffered injury in fact.

67. As a direct and proximate result of Defendants' unfair, unlawful and fraudulent business practices, Defendants have been unjustly enriched and should be ordered to make restitution to Plaintiff pursuant to Business and Professions Code sections 17203 and 17204.

68. The unlawful, unfair and fraudulent business practices of Defendants described herein present a continuing threat to Plaintiff in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct is causing and will continue to cause irreparable injury to Plaintiff unless enjoined or restrained.

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant him relief as follows:

1. Economic damages in an amount to be proved at trial, but not less than a 7% undiluted share in the QUICKLEGAL ENTITIES or $280,000, whichever is greater;

2. Punitive or exemplary damages in an amount to be proved at trial;

3. Temporary, preliminary and permanent injunctive relief, including an injunction requiring Defendants to deliver to Plaintiff certificates of stock in the QUICKLEGAL ENTITIES, to deliver annual financial reports for the QUICKLEGAL ENTITIES, and to fully honor Plaintiff's shareholder rights;

4. Unpaid minimum wages;

1       5.       Penalties for unpaid wages, including wages for an additional 30 days at the agreed-upon wage rate;

      6.       Interest on unpaid wages;

      7.       Restitution;

      7.       Reasonable attorneys' fees and costs; and

      8.       Such other relief as the Court may deem just and proper.

DATED: June 11, 2016               Respectfully submitted,

                                      THE SCHAPS LAW OFFICE, A.P.C.

                                      _____/s/_____
                                      By: Michael A. Schaps
                                      Attorneys for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

DATED: June 11, 2016                    Respectfully submitted,


                                        THE SCHAPS LAW OFFICE, A.P.C.


                                        _____/s/_____
                                        By: Michael A. Schaps
                                        Attorneys for Plaintiff