1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                       San Francisco Division

11

12   JUSTIN C LOWENTHAL,                Case No. 16-cv-03237-LB

13            Plaintiff,                **ORDER GRANTING IN PART AND
                                        DENYING IN PART THE
14        v.                            DEFENDANTS' MOTIONS TO
                                        DISMISS; DENYING DEFENDANT
15   QUICKLEGAL, INC., et al.,          ZAL'S MOTION TO QUASH**

16            Defendants.               Re: ECF Nos. 17, 24, 27, 30, 38, 42

17                        **INTRODUCTION**

18        This employment dispute arises from a start-up's alleged failure to pay its general counsel

19   stock-based compensation under the parties' agreement.[1] Justin Lowenthal, the alleged in-house

20   counsel, sued Lawyers on Demand, Quicklegal, and Quicklegal Practice Management — all

21   allegedly reconstitutions of the same entity — when he worked for four months but did not receive

22   the 5%–7% worth of common stock he was promised.[2] Mr. Lowenthal also sued the entities'

23   directors, officers, and shareholders.[3] He brings claims for breaches of contract and of fiduciary

24   duties, violations of California and federal wage and hour laws, and violation of California's

25

26   _____

     [1] First Amended Compl. ("FAC") — ECF No. 5. Record citations refer to material in the Electronic
27   Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.
     [2] *Id.* ¶¶ 13, 20, 27, 31, 36.
28   [3] *Id.* ¶¶ 3–5.

United States District Court
Northern District of California

Unfair Competition Law.[4] The defendants now move to dismiss Mr. Lowenthal's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and for failure to state a claim.[5] One defendant, Mr. Zal, moves to quash service.[6]

The court can decide the matters without oral argument and so it vacated the hearing. *See* N.D. Cal. Civ. L.R. 7-1(b). The court denies the defendants' motion to dismiss based on a lack of subject-matter jurisdiction. The court grants defendants Timm, Chambers, and Delgado's motions and dismisses these defendants but grants leave to amend. The court denies the remaining motions, including Mr. Zal's motion to quash.

## STATEMENT

In June and July 2014, Lawyers on Demand — acting through president and CEO Bluford and vice president Zal — hired Mr. Lowenthal as in-house general counsel.[7] At that time, however, Lawyers on Demand was a "new start-up with limited funds available to pay employee salaries."[8] So, Messrs. Bluford and Zal offered Mr. Lowenthal stock in lieu of salary.[9] The parties entered a written "employment agreement."[10]

The employment agreement set forth the terms of Mr. Lowenthal's part-time employment as Lawyers on Demand's in-house counsel.[11] He was to work for four months, from July to November of 2014.[12] Although Mr. Lowenthal was part-time, he agreed to "devote substantial

---

[4] *Id.* ¶¶ 37–68.

[5] Delgado Motion to Dismiss — ECF No. 18; Chambers, Timm, QPMI Motion to Dismiss — ECF No. 25; Quicklegal and Lawyers on Demand Motion to Dismiss — ECF No. 31; Bluford Motion to Dismiss — ECF No. 39.

[6] Zal Motion to Quash — ECF No. 43.

[7] FAC ¶ 12.

[8] *Id.* ¶ 13.

[9] *Id.*

[10] *Id.* ¶ 14.

[11] *See id.* ¶¶ 15–25; Employment Agreement — ECF No. 5-1.

[12] FAC ¶ 16.

business efforts and time" to the position.[13] He was, however, allowed to "maintain or take other employment or engagement contemporaneously."[14] Lawyers on Demand agreed to pay Mr. Lowenthal in 50,000 shares of common stock, "or the equivalent of 5% of all outstanding shares on a fully-diluted basis, whichever is greater."[15] Shortly after the parties signed the agreement, the defendants increased Mr. Lowenthal's equity stake to 7% as an incentive bonus.[16]

The same month the parties signed the agreement, Lawyers on Demand "reconstituted itself" as Quicklegal.[17] Mr. Lowenthal emailed Mr. Bluford to confirm that Quickegal would honor his contract and to confirm that "that [they] modified [his] equity-stake from 5% to 7%."[18] Mr. Bluford replied: "Confirmed!"[19] Mr. Lowenthal then continued to serve as Lawyers on Demand and Quicklegal's general counsel for the agreement's four-month term.[20] In November, his employment ended and his 7% equity stake fully vested.[21]

Mr. Lowenthal emailed Mr. Bluford three months later.[22] He asked that Mr. Bluford reflect his common shares on the company's ledger and deliver his stock certificates.[23] He also "insist[ed] that [he] be included in general communications, letters, and meeting invites as they pertain to the shareholders."[24] Mr. Bluford responded, allegedly on behalf of all defendants, repudiating the employment agreement and claiming that Mr. Lowenthal "had provided 'services' as 'outside

---

[13] *Id.* ¶ 19.

[14] *Id.*

[15] *Id.* ¶ 20.

[16] *Id.* ¶ 27.

[17] *Id.* ¶ 26.

[18] *Id.* ¶ 28, Ex. B.

[19] FAC ¶ 28, Ex. B.

[20] FAC ¶ 29.

[21] *Id.* ¶ 31.

[22] *Id.* ¶ 32.

[23] *Id.*

[24] *Id.*

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

counsel' rather than as an employed in-house attorney."[25] Mr. Bluford also suggested that Mr. Lowenthal's work "had been unsatisfactory," despite no one having suggested this before.[26]

The defendants then allegedly formed a new entity: Quicklegal Practice Management, Inc. ("QPMI").[27] Mr. Lowenthal asserts that QPMI engages in the same business as Lawyers on Demand and Quicklegal and uses the same brand and domain names, social media accounts, and software.[28] He also asserts that QPMI has or had "essentially the same board of directors, shareholders, and officers."[29]

Despite these similarities, Mr. Zal emailed Mr. Lowenthal to inform him that "QPMI is a totally separate entity from Quicklegal," meaning that Mr. Lowenthal had no claim against QPMI.[30] Mr. Zal also told Mr. Lowenthal that Quicklegal's "bank account funds are currently frozen," and that his 7% equity share "has very little value right now."[31]

Through these events, none of the defendants paid Mr. Lowenthal for his four months of work.[32] He accordingly sued, asserting six claims against the various defendants:

| No. | Claim | Defendants Named |
|-----|-------|------------------|
| 1. | Breach of contract | • Lawyers on Demand, Quicklegal, and QPMI (the "entity defendants") |
| 2. | Breach of fiduciary duties | • Bluford, Zal, and Chambers (in their capacities as corporate officers)<br>• Bluford, Zal, Chambers, Delgado, and Timm (in their capacities as board members)<br>• Bluford, Zal, Chambers, Delgado, and Timm (in their capacities as majority shareholders) |

United States District Court<br>Northern District of California

---

[25] *Id.* ¶ 33.

[26] *Id.*

[27] *Id.* ¶ 34.

[28] *Id.*

[29] *Id.*

[30] *Id.* ¶ 35.

[31] *Id.*

[32] *Id.* ¶ 36.

| No. | Claim | Defendants Named |
|---|---|---|
| 3. | Unpaid wages, penalties, and interest in violation of California's Labor Code (Cal. Labor Code §§ 201, 203, 204.2, 218.5, and 218.6) | • The entity defendants |
| 4. | Violation of the Fair Labor Standards Act ("FLSA") | • All defendants |
| 5. | Violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et seq.*) | • All defendants |

The defendants now move to dismiss Mr. Lowenthal's claims under Rules 12(b)(1) and 12(b)(6) on two predominant bases: (1) the court lacks subject-matter jurisdiction because Mr. Lowenthal's only federal claim (under the FLSA) is "frivolous"; and (2) Mr. Lowenthal fails to state a plausible claim.[33] Mr. Zal also moves to quash the summons for insufficient service.[34]

## GOVERNING LAW

### 1.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)

A complaint must contain a short and plain statement of the ground for the court's jurisdiction (unless the court already has jurisdiction and the claim needs no new jurisdictional support). Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). Under a facial attack, the court "accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most favorable to the plaintiffs." *Warren*

---

[33] Delgado Motion to Dismiss — ECF No. 18; Chambers, Timm, QPMI Motion to Dismiss — ECF No. 25; Quicklegal and Lawyers on Demand Motion to Dismiss — ECF No. 31; Bluford Motion to Dismiss — ECF No. 39.

[34] Zal Motion to Quash — ECF No. 43.

United States District Court
Northern District of California

*v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In a factual attack, the court "need not presume the truthfulness of the plaintiff's allegations" and "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**2.   Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6)**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**3.   Leave to Amend**

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

1

# ANALYSIS

2

## 1.   The Court Has Subject-Matter Jurisdiction

3

The defendants move to dismiss Mr. Lowenthal's complaint for lack of subject-matter

4

jurisdiction.[35] To summarize their argument: the court derives jurisdiction from only Mr.

5

Lowenthal's FLSA claim, which the court must dismiss because either Mr. Lowenthal was not an

6

"employee" or the defendants were not "employers" under that act. They accordingly argue that,

7

once the FLSA claim is dismissed, the court will be stripped of subject-matter jurisdiction and

8

should dismiss the case. The defendants justify this attack — a facial and factual attack supported

9

by outside evidence — by asserting that Mr. Lowenthal was "indisputably" an independent

10

contractor, not an employee, making his FLSA claim frivolous.[36] The issue is whether this is a

11

proper attack on federal-question-based jurisdiction.

12

Courts must not infer that a federal statutory element is jurisdictional and not merits-based: "If

13

the Legislature clearly states that a threshold limitation on a statute's scope shall count as

14

jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with

15

the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional,

16

courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y&H Corp.*, 546

17

U.S. 500, 515–16 (2006) (internal citations omitted). In fact, "[j]urisdictional dismissals in cases

18

premised on federal-question jurisdiction are exceptional." *Safe Air for Everyone v. Meyer*, 373

19

F.3d 1035, 1039 (9th Cir. 2004) (quoting *Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 140

20

(9th Cir. 1983)) (internal quotations omitted). Such a dismissal may be warranted where the

21

federal claim appears "immaterial and made solely for the purpose of obtaining federal jurisdiction

22

or where such claim is wholly insubstantial and frivolous." *Id.* (quoting *Bell v. Hood*, 327 U.S.

23

678, 682–83 (1946)) (internal quotations omitted). But dismissal is inappropriate where "the

24

jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is

25

26

[35] Chambers, Timm, QPMI Motion to Dismiss — ECF No. 25 at 9–15; Quicklegal and Lawyers on

27

Demand Motion to Dismiss — ECF No. 31 at 7–20; Bluford Motion to Dismiss — ECF No. 39 at 8–21.

28

[36] *See, e.g.*, Quicklegal and Lawyers on Demand Motion to Dismiss — ECF No. 31 at 20.

United States District Court
Northern District of California

United States District Court
Northern District of California

dependent on the resolution of the factual issues going to the merits of an action." *Id.* (quoting *Sun Valley*, 711 F.2d at 139) (internal quotations omitted). The issues of jurisdiction and merits are "so intertwined" where "a statute provides the basis for both the subject matter jurisdiction . . . and the plaintiff's substantive claim." *Id.* at 1039–40 (quoting *Sun Valley*, 711 F.2d at 139) (internal quotations omitted). In that case, "a motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper only when the allegations of the complaint are frivolous." *Thornhill Publ'g Co. v. Gen. Tel. Elec. Co.*, 594 F.2d 730, 734 (9th Cir. 1979).

Courts in this district have denied similar FLSA jurisdictional challenges. For example, in *Diaz v. Ming & Kent, Inc.*, the defendants argued that the plaintiff's complaint "fail[ed] to raise a federal question because she, as an employee, was not engaged in 'commerce' and [the defendant-business] [did] not qualify as an 'enterprise engaged in commerce' as defined by the FLSA." C 09-05774 RS, 2010 WL 890040, at *1 (N.D. Cal. Mar. 8, 2010). The defendants did not present evidence that the claim was "patently immaterial, insubstantial or frivolous," and the court found "no indication that Congress intended for the 'employee' or 'enterprise' engaged in commerce provisions to be jurisdictional." *Id.* at *1–*2. Even though the defendants may in the end have been correct, that did not strip the court of subject-matter jurisdiction; the well-pleaded complaint survived. *Id.* at *2. *See also Arbaugh*, 546 U.S. at 516 (holding that a numerical element to the definition of an "employer" under Title VII was not jurisdictional but an element of a plaintiff's substantive claim); *Hopkins v. Cornerstone Am.*, 512 F. Supp. 2d 672, 681 (N.D. Tex. 2007), *vacated in part on other grounds by Hopkins v. Cornerstone Am.*, 545 F.3d 338 (5th Cir. 2008) (applying *Arbaugh* to conclude that "the determination of whether Plaintiffs are employees or independent contractors does not affect federal-court subject-matter jurisdiction but, instead, 'delineates a substantive ingredient' of Plaintiffs' FLSA claims for relief").

The defendants' arguments here go to the merits of Mr. Lowenthal's FLSA claim and they have not shown that the claim is frivolous or immaterial. To the contrary, the parties vigorously dispute Mr. Lowenthal's "employee" status (versus independent contractor) and the defendants' "employer" statuses (*i.e.* whether QPMI and the individual defendants "employed" Mr. Lowenthal). These issues are definitional and merits-based, and the court does not find Mr.

1    Lowenthal's allegations to be frivolous or merely for the purpose of obtaining jurisdiction. *See* 29

2    U.S.C. § 203(d), (e); *see Diaz*, 2010 WL 890040 at *2; *Barron v. Patel*, No. 3:10-cv-1636-D, 2011

3    WL 690183, at *1 (N.D. Tex. Feb. 16, 2011) (denying defendants' FLSA jurisdictional challenge

4    based on the plaintiff's employee versus independent contractor status because the court's

5    jurisdiction "does not turn on whether [the plaintiff] satisfies the statutory definition of an

6    'employee'"). Thus, although the FLSA grants federal jurisdiction when an "employee" sues an

7    "employer", *see* 29 U.S.C. § 216(b), these issues are — at least — "so intertwined" with the

8    merits of the case that a jurisdictional dismissal is inappropriate on this record.

9        Because the defendants have not shown the FLSA claim is frivolous, the court denies the

10   motions to dismiss under Rule 12(b)(1). The court has federal-question jurisdiction over Mr.

11   Lowenthal's FLSA claim and supplemental jurisdiction over the others — all of which relate to

12   his alleged employment and non-payment, and thus are "so related" to his FLSA claim. *See* 28

13   U.S.C. §§ 1331, 1367(a). The defendants' effort to rescind the parties' agreement under California

14   Rule of Professional Conduct 3-300 does not change this conclusion.[37] Even if they can rescind

15   the agreement, that does not make his claim frivolous.

16

17                              *        *        *

18       The court therefore construes the defendants' arguments as attacking the merits of Mr.

19   Lowenthal's FLSA claim, and will consider them in the 12(b)(6) context. In doing so, the court

20   considers only the facts alleged in the complaint and the documents attached thereto. *Hal Roach*

21   *Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) (noting

22   that a district court generally "may not consider any material beyond the pleadings in ruling on a

23   Rule 12(b)(6) motion" but "material which is properly submitted as part of the complaint may be

24   considered"); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (courts may consider

25   documents incorporated by reference in the complaint); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669

26   F.3d 1005, 1016 n.9 (9th Cir. 2014) (courts may consider materials subject to judicial notice). The

27

28   [37] Quicklegal and Lawyers on Demand's Reply — ECF No. 56 at 7–14.

United States District Court
Northern District of California

court does not consider the defendants many declarations or attachments, which raise factual contentions beyond the scope of a Rule 12(b)(6) motion.

## 2.   The Court Grants in Part and Denies in Part the Defendants' 12(b)(6) Motions

### 2.1  FLSA Claims

Mr. Lowenthal asserts a claim for unpaid minimum wages under the Fair Labor Standards Act ("FLSA").[38] The defendants move to dismiss the claim because (1) he is not a covered employee, (2) they are not covered employers, and (3) they never owed Mr. Lowenthal minimum-wage payments. The issue is whether the complaint — not considering the defendants' extrinsic evidence — plausibly supports a claim under the FLSA.

#### 2.1.1  Lowenthal Is a Covered Employee

The defendants first argue that Mr. Lowenthal was not a covered "employee" under the FLSA. The FLSA defines "employee" broadly to include "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *Sandifer v. United States Steel Corp.*, 134 S. Ct. 870, 875 (2014) ("[T]o 'employ' is 'to suffer or permit to work.'"). Independent contractors, though, are not included: they are not "employees" under the Act. *See Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981). But because of the FLSA's protectionary social purpose and application, courts apply an "economic realities" test to determine whether an individual is an employee or independent contractor. *Id.* In doing so, courts consider the following non-exhaustive list of factors:

> 1) The degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his tasks, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

---

[38] FAC ¶¶ 59–62.

*Id.* (quoting *Real v. Driscol Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979)). None of these factors is alone determinative. *Id.* The presence of an employer-employee relationship instead depends "upon the circumstances of the whole activity, and ultimately, whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service." *Id.* (internal citations and quotations omitted).

Even if an individual is an "employee," the FLSA still may not apply. The FLSA's requirements apply only to employees (1) "engaged in commerce or in the production of goods in commerce," and (2) "of enterprises engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a); *Vega v. Peninsula Household Servs., Inc.*, No. C-08-03815 JCS, 2009 WL 656291, at *3 (N.D. Cal. Mar. 12, 2009). Employees "engaged in commerce" include those that regularly utilize the channels of interstate and foreign commerce in the course of their employment duties. 29 C.F.R. § 776.10(a). This includes, for example, employees whose "regular and recurrent" duties involve "use of the interstate mails, telegraph, telephone or similar instrumentalities for communication across State lines." *Id.* § 776.10(b).

Here, Mr. Lowenthal plausibly pleads that he is a (1) an employee (2) covered by the FLSA.

First, it is plausible that he was an employee, not an independent contractor. Some facts indicate the defendants may have controlled his work. For example, the agreement provides that he must perform the services "at places directed by [Lawyers on Demand]" and he "may be required to travel temporarily . . . for [Lawyer on Demand's] business."[39] The agreement also said that "[Lawyers on Demand] shall employ [Mr. Lowenthal] as its General Counsel or in such other similar capacity or capacities as [it] may from time to time prescribe."[40] These terms indicate Lawyers on Demand had some authority to control where Mr. Lowenthal worked and what he did. It is moreover reasonable to believe that someone — maybe President and CEO Bluford or Vice President (and attorney) Zal — oversaw and managed his work. There is no indication that Mr. Lowenthal's managerial skill set him up for potential profit or loss: he instead pleads that he

---

[39] *Id.* ¶ 17.

[40] *Id.* ¶ 18.

United States District Court
Northern District of California

1    agreed to work for four months at a set stock-based compensation.[41] The defendants provided him

2    with at least some work-related materials: they gave him a personal office, "office keys, a . . .

3    uniform, a parking pass, and business cards bearing the title 'General Counsel.'"[42] It also appears

4    the working relationship was — in some way — intended to continue permanently: the initial term

5    was only four months,[43] but the parties specifically agreed to negotiate "with respect to a long-

6    term employment arrangement."[44] The complaint and the agreement additionally identify Mr.

7    Lowenthal as "general counsel" — typically a longer-term employee that handles most of the

8    company's legal matters.[45] And as general counsel — the defendants' chief legal officer — he

9    certainly may have rendered services integral to their businesses. *See* Black's Law Dictionary,

10   General Counsel (10th ed. 2014) (defining "general counsel" as a "lawyer or law firm that

11   represents a client in all or most of the client's legal matters"). Finally, Mr. Lowenthal alleges that

12   he worked for Quicklegal and Lawyers on Demand "at the expense of his other work" suggesting

13   that, as an economic reality, he may have been dependent on these defendants as employers.[46]

14       The defendants are correct that some factors may indicate that Mr. Lowenthal is an

15   independent contractor, or, at least, are absent from the complaint's factual landscape. But for

16   now, this is sufficient to show Mr. Lowenthal was an "employee." The defendants' argument that

17   they rescinded the agreement does not change this conclusion: the existence of the agreement is

18   not determinative of "employee" status. (They apparently even argue as much by asserting "[i]t is

19   irrelevant that Lowenthal designated himself to be an 'Employee' of [Lawyers on Demand] in the

20   'Employment Agreement.'")[47]

---

[41] *Id.* ¶¶ 16, 20.

[42] *Id.* ¶ 29.

[43] *Id.* ¶ 16.

[44] Employment Agreement — ECF No. 5-1 at 5.

[45] FAC ¶ 12; Employment Agreement at 2.

[46] FAC ¶ 29.

[47] Quicklegal and Lawyers on Demand Motion to Dismiss — ECF No. 31 at 10.

United States District Court
Northern District of California

Second, Mr. Lowenthal plausibly engaged in interstate commerce. At this stage, it is reasonable to believe that Mr. Lowenthal, the general counsel of an internet-based start-up that was allowed to telecommute,[48] utilized the channels of or otherwise engaged in interstate commerce.

In the end, Rule 8(a)(2) does not require a plaintiff to plead all of the evidence; the claim need only be plausible. And here, as alleged and on sum, it is plausible that Mr. Lowenthal was an employee, not an independent contractor, covered by the FLSA.

### 2.1.2  Corporate Defendants: Quicklegal, Lawyers on Demand, and QPMI are Covered Employers

The defendants do not contest that Quicklegal and Lawyers on Demand were not "employers" under the FLSA; they instead argue that QPMI never employed Mr. Lowenthal and thus cannot be an "employer."[49] They assert that Mr. Lowenthal insufficiently pleads successor-in-interest and alter-ego liability theories to hold QPMI liable.[50]

A successor-in-interest may be liable for its predecessor's FLSA violations where: (1) the successor was a "bona fide successor"; (2) the successor "had notice of the potential [FLSA] liability"; and (3) the predecessor is not "able to provide adequate relief directly." *Steinbach v. Hubbard*, 51 F.3d 843, 845–46 (9th Cir. 1995). Whether a successor is a "bona fide successor" "will hinge principally on the degree of business continuity," *id.* at 846, a factor-based determination:

> (1) whether there was substantial continuity of business operations between the predecessor and successor; (2) the extent to which the alleged successor used the same plant and/or facilities that the predecessor used; (3) the extent of the successor's use of the same or substantially the same workforce; (4) the existence of the same jobs under the same conditions; (5) whether the supervisors in the predecessor carried over to the successor; (6) the successor's use of the same machinery, equipment, and methods of production; and (7) whether the alleged successor provided the same product or service to its customers.

---

[48] FAC ¶ 17.

[49] Chambers, Timm, QPMI Motion to Dismiss — ECF No. 25 at 10–12.

[50] *Id.* at 12–15.

*Flores v. Velocity Express, LLC*, No. 12-cv-05790-JST, 2015 WL 3902006, at *6 (N.D. Cal. June 23, 2015). Because of "the difficulty of the successorship question, . . . emphasis on the facts of each case as it arises is especially appropriate." *Steinbach*, 51 F.3d at 846.

The successorship-doctrine's roots "lie in equity," and consequently "'fairness is a prime consideration in [its] application.'" *Steinbach*, 51 F.3d at 846 (quoting *Criswell v. Delta Air Lines, Inc.*, 868 F.2d 1093, 1094 (9th Cir. 1989)). Thus, "courts have recognized that extending liability to successors will sometimes be necessary in order to vindicate important statutory policies favoring employee protection." *Id.* at 845. Indeed, "[w]here employee protections are concerned, 'judicial importation of the concept of successor liability is essential to avoid undercutting Congressional purpose by parsimony in provision of effective remedies.'" *Id.* (quoting *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1237 (7th Cir. 1986)).

Here, Mr. Lowenthal sufficiently alleges that QPMI is Quicklegal and LOD's successor. First, QPMI is plausibly a "bona fide successor": it engages in the same business as Quicklegal and LOD; it uses the same brand name, domain name, logo, social media accounts, and software; and QPMI "has and/or had essentially the same board of directors, shareholders, and officers."[51] Based on the above factors, these facts show a continuity of business. Second, it is plausible that QPMI had notice of the potential FLSA liability — it is allegedly owned and operated by the same people (the defendants), and was created approximately ten months after Mr. Lowenthal's employment and seven months after Mr. Bluford repudiated the agreement.[52] Third, Quicklegal and Lawyers on Demand appear unable to provide relief: Mr. Lowenthal quotes an email from Mr. Zal saying Quicklegal's "bank account funds are currently frozen" and Mr. Lowenthal's claimed 7% share in the company "has very little value right now."[53]

---

[51] FAC ¶ 34.

[52] *Id.* ¶¶ 31–34.

[53] *Id.* ¶ 35.

United States District Court
Northern District of California

United States District Court
Northern District of California

In light of the successorship-doctrine's policies and at this early stage in the case, this is sufficient to allege QPMI may be liable as Quicklegal and LOD's successor-in-interest for purposes of the FLSA.

Separately, neither party cites persuasive authority that alter-ego liability should or should not be applied on the facts of this case. The defendants cite alter-ego cases where a shareholder — either an individual or parent entity — is held liable for a corporation's debts.[54] Those cases are different. Here, there are no allegations that QPMI has any ownership interest in Lawyers on Demand or Quicklegal, and Mr. Lowenthal clarifies he is not proposing alter-ego liability against the defendant-shareholders.[55] Mr. Lowenthal points out that these cases are "inapposite," but provides no authority of his own showing that FLSA alter-ego liability is appropriate here.[56]

Alter-ego liability may be possible — for example, on a common or single enterprise-employer basis — but the parties must delineate why (or why not). Because successor liability is sufficient for now, however, the court expresses no opinion about the viability of an alter-ego theory of liability.

### 2.1.3  Individual Defendants: Bluford Is an "Employer"; Chambers, Timm, and Delgado Are Not

Individual defendants Chambers, Timm, Delgado, and Bluford also move to dismiss Mr. Lowenthal's FLSA claim on the basis that they are not "employers" under that act.[57] Mr. Zal does not challenge his own classification as an employer, and so the court does not now address his "employer" status.

The FLSA broadly defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Ninth Circuit has held "that the definition of 'employer' under the FLSA is not limited by the common law concept

---

[54] *See* Timm, Chambers, QPMI Motion to Dismiss — ECF No. 25 at 13.

[55] Opposition to Chambers, Timm, QPMI Motion — ECF No. 49 at 4.

[56] *Id.* at 3–4.

[57] *See* Delgado Motion to Dismiss — ECF No. 18 at 5; Chambers, Timm, QPMI Motion to Dismiss — ECF No. 25 at 10–12, 14; Bluford Motion to Dismiss — ECF No. 39 at 23–26.

of 'employer,' but 'is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.'" *Lambert v. Ackerley*, 180 F.3d 997, 1011–12 (9th Cir. 1999) (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983)). To determine if a defendant is an employer, courts us an "economic reality" test instead of "technical concepts." *Hale v. Arizona*, 993 F.2d 1387, 1393–94 (9th Cir. 1993). Under the economic reality test, the court must consider "the totality of the circumstances of the relationship, including whether the alleged employer has the power to hire and fire the employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." *Id.* at 1394. Liability may extend to individual defendants "[w]here an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (quoting *Lambert*, 180 F.3d at 1012).

Here, Messrs. Bluford and Zal "hired and employed [Mr. Lowenthal] to serve as [Lawyers on Demand's] in-house General Counsel."[58] Both Bluford and Zal offered Mr. Lowenthal stock in lieu of salary and both signed the employment agreement.[59] Mr. Bluford also confirmed that, once Quicklegal was formed, it would honor Mr. Lowenthal's contract with Lawyers on Demand.[60] Mr. Lowenthal communicated with Mr. Bluford about his compensation, and Mr. Bluford subsequently repudiated the employment agreement.[61] These facts indicate Mr. Bluford had economic control over the relationship — *e.g.*, the authority to hire, fire, and determine the rate and method of compensation — and thus is an "employer" for purposes of the FLSA.

The assertions against the other defendants, by contrast, are insufficient to support that label. Mr. Lowenthal alleges that Deglado, Chambers, and Timm are directors of, and are (along with others) the majority shareholders of, the entity defendants.[62] He also asserts that Ms. Chambers is

---

[58] FAC ¶ 12.

[59] *Id.* ¶¶ 13–14; Employment Agreement — ECF No. 5-1 at 5.

[60] FAC ¶ 28.

[61] *Id.* ¶¶ 32–33.

[62] *Id.* ¶¶ 4–5.

an officer.[63] That is it; he provides no other allegations about these defendants relating to his FLSA claim. Mr. Lowenthal argues in his briefs that these defendants somehow participated in the decision not to pay him.[64] But he does not allege that — or any other fact — in his FAC to indicate these individual defendants had control over the employment relationship. And he does not cite any authority that officer-, director-, or majority-shareholder-status alone is sufficient to qualify as an "employer." *Cf. Vega*, 2009 WL 656291 at *5 (finding that the plaintiff stated a claim against former employer's president where president allegedly had "control over the Plaintiff's work condition and work situation").

The court therefore dismisses Mr. Lowenthal's FLSA claim against Delgado, Chambers, and Timm because they are not "employers" as pled. The claim survives against Mr. Bluford.

### 2.1.4  Lowenthal Was Not Paid the Minimum Wage

Finally, the defendants generally argue that Mr. Lowenthal does not adequately plead unpaid minimum wages under the FLSA. The FLSA's minimum wage requirements apply to covered employees "unless the employer can claim an 'exemption' from coverage." Rosen, Aspen, St. Eve, Cabraser, Schuck, Cal. Prac. Guide Federal Employment Litigation § 6:20 (The Rutter Group 2016). At the pleading stage, "the plaintiff must allege at least one workweek when he worked . . . [and] was not paid minimum wages." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014). The plaintiff does not need to "approximate the number of hours worked without compensation." *Id.*

Here, Mr. Lowenthal alleges that he worked for four months without receiving any payment.[65] That is enough. He does not, as the defendants argue, need to submit a timesheet or other record of his hours — that argument is contrary to the Ninth Circuit's guidance in *Landers*.[66] And to the

---

[63] *Id.* ¶ 3.

[64] Opposition to Delgado Motion — ECF No. 29 at 5; Opposition to Chambers, Timm, QPMI Motion — ECF No. 49 at 4.

[65] FAC ¶¶ 14–16, 31, 36.

[66] *See* Quicklegal and Lawyers on Demand Motion to Dismiss — ECF No. 31 at 23–24.

extent that the defendants argue he was only entitled to payment of stock and thus not minimum

"wages" (*i.e.* cash), they cite no authority for the proposition that this precludes his minimum-

wage claim.[67] They may be right: maybe the payment arrangement fits an applicable exemption or

otherwise precludes Mr. Lowenthal's claim. But they provide no authority for dismissing the

claim on this basis and the court denies the argument.

### 2.2  Breach of Contract Claim (Against QPMI)

Mr. Lowenthal asserts a breach-of-contract claim against Lawyers on Demand, Quicklegal,

and QPMI.[68] QPMI argues that Mr. Lowenthal cannot state a breach-of-contract claim against it

because it was not party to the agreement and was not formed until after his employment ended.[69]

The issue is whether QPMI may be held liable as a successor, assignee, or alter ego.[70]

"The general rule of successor nonliability provides that where a corporation purchases, or

otherwise acquires by transfer, the assets of another corporation, the acquiring corporation does

not assume the selling corporation's debts and liabilities." *Fischer v. Allis-Chalmers Corp. Prod.

Liab. Trust*, 95 Cal. App. 4th 1182, 1188 (2002). A purchaser may be held liable as successor,

though, where "(1) there is an express or implied agreement of assumption, (2) the transaction

amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a

mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent

purpose of escaping liability for the seller's debts." *Cleveland v. Johnson*, 209 Cal. App. 1315,

1327 (2012) (quoting *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977)). The rationale of the "mere

continuation" theory is that "corporations cannot escape liability by a mere change of name or a

shift of assets when and where it is shown that the new corporation is, in reality, but a continuation

of the old." *Blank v. Olcovich Shoe Corp.*, 20 Cal. App. 2d 456, 461 (1937). This is especially true

"when actual fraud or the rights of creditors are involved." *Id.* In California, a corporation will be

---

[67] *See id.* at 23.

[68] FAC ¶¶ 37–43.

[69] Chambers, Timm, QPMI Motion to Dismiss — ECF No. 25 at 16.

[70] Opposition to Chambers, Timm, QPMI Motion — ECF No. 49 at 3–4.

held liable as a "mere continuation" successor only "upon a showing of *one or both* of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations." *Cleveland*, 209 Cal. App. at 1327 (quoting *Ray*, 19 Cal. 3d at 29) (emphasis in original).

Here, the parties dispute the effect of the employment agreement. Mr. Lowenthal contends the language binds QPMI as a successor or assignee: the contract was "entered into between Lawyers on Demand . . . or any of its current or future subsidiaries, affiliates, successors or assigns . . . and [Mr.] Lowenthal."[71] He urges that QPMI must fall within one of these categories.[72] Yet QPMI argues that assignment of the agreement was at LOD's sole option, which never happened: "[Lawyers on Demand] may, at its sole option, assign this Agreement and all rights and obligations under it to any business entity that succeeds to all or substantially all of [its] business through that merger or sale of assets."[73] Whether expressly assigned by the terms of the contract or not, however, Mr. Lowenthal alleges sufficient facts for successor liability.

Mr. Lowenthal alleges QPMI is a "mere continuation, reconstitution and/or alter ego" or Lawyers on Demand and Quicklegal.[74] He supports this assertion by alleging that QPMI engages in the same business and uses the same brand name, domain name, logo, social media accounts, and software as the other entities.[75] He further asserts that it "has and/or had essentially the same board of directors, shareholders, and officers," which he identifies as the individual defendants named here.[76]

These allegations are sufficient to indicate QPMI is the successor to Lawyers on Demand and Quicklegal — either under the contract's terms or the "mere continuation" theory. It would be

---

[71] *Id.* at 3; Employment Agreement — ECF No. 5-1 at 2.

[72] Opposition to Chambers, Timm, QPMI Motion — ECF No. 49 at 3–4.

[73] Chambers, Timm, QPMI Reply — ECF No. 55 at 7–9; Employment Agreement ¶ 10.

[74] FAC ¶ 34.

[75] *Id.*

[76] *Id.* ¶¶ 3–5, 34.

United States District Court
Northern District of California

1    impossible for Mr. Lowenthal to prove, at this stage, that QPMI expressly assumed the liability, as

2    the defendants argue. The contract claim survives against QPMI.

3

4        **2.4  California Labor Code Claims**

5        Mr. Lowenthal asserts against the entity defendants claims for unpaid wages, penalties, and

6    interest under California Labor Code sections 201, 203, 204.2, 218.5, and 218.6.[77] The only

7    apparent challenge the various defendants make against these claims is that Mr. Lowenthal is not

8    an "employee" under California law.[78]

9        Generally, like the FLSA, independent contractors are not "employees" covered by

10   California's labor laws. *See Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1073–74 (N.D. Cal. 2015);

11   Chin, Wiseman, Callahan and Lowe, Cal. Prac. Guide Employment Litigation § 11:116 (The

12   Rutter Group 2016). In *Martinez v. Combs*, the California Supreme Court held that that "to

13   employ" means, alternatively, "(a) to exercise control over he wages, hours or working conditions,

14   *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment

15   relationship." *Id.* at 49 Cal. 4th 35, 64 (2010). Although *Martinez* applied this test only to Labor

16   Code section 1194 (not at issue here), other courts have applied this test to other code sections. *See*

17   *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014); *Ochoa v. McDonald's*

18   *Corp.*, 133 F. Supp. 3d 1228, 1222 n.3 (N.D. Cal. 2015) (collecting cases); *see also Taylor v.*

19   *Waddell & Reed Inc.*, No. 09-cv-02909 AJB (WVG), 2013 WL 435907, at *2, *3–*7 (S.D. Cal.

20   Feb. 1, 2013) (applying *Martinez*'s definition to claims under Labor Code sections 201, 202, 203,

21   204, 218.5, 218.6, and others).

22       The third prong under *Martinez* incorporates the common law definition of "employment."

23   *Martinez*, 49 Cal. 4th at 64. The "principle test of an employment relationship" in California

24   common law is "whether the person to whom service is rendered has the right to control the

25

26

27   ───────────────
     [77] FAC ¶¶ 51–58.

28   [78] *See, e.g.*, Quicklegal and Lawyers on Demand Motion to Dismiss — ECF No. 31 at 10–17.

manner and means of accomplishing the result desired." *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989). Courts also consider other factors, such as:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.* at 351. "[T]he right to discharge at will, without case," is also "strong evidence in support of an employment relationship." *Id.* at 350–51.

The defendants cite Labor Code section 3353 for the definition of "independent contractor."[79] This section is part of the Worker's Compensation Act, under which Mr. Lowenthal does not sue. Even if this definition applies, the California Supreme Court has described it as the legislature's insertion of the "common law 'control-of-work' test" into that act. *Id.* at 349–50. This definition therefore would not change the analysis.

Here, considering of the *Martinez* tests, the above factors, and for reasons similar to those as stated above (see Section 2.1.1), the court denies the defendants' arguments. At this stage, it is at least plausible that Mr. Lowenthal was an employee.

## 2.5  Fraudulent Transfer: UCL and Breach of Fiduciary Duty Claims

Mr. Lowenthal additionally asserts a claim under California's Unfair Competition Law (against all defendants), and a claim for breach of fiduciary duties (against the director, officer, and shareholder defendants).[80] The defendants broadly challenge these claims for lack of particularity because the allegations sound in fraud. The court therefore only addresses the claims — and the defendants' challenges to them — as they relate to the particularity of the fraud alleged.

---

[79] *Id.*

[80] FAC ¶¶ 44–50, 63–68.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. &
Prof. Code § 17200. "[Because] section 17200 is [written] in the disjunctive, it establishes three
separate types of unfair competition. The statute prohibits practices that are either 'unfair' or
'unlawful' or 'fraudulent.'" *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see
also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "[T]o
state a claim under the UCL based on fraudulent conduct, [a p]laintiff must allege, with
particularity, facts sufficient to establish that the public would likely be deceived b Defendants'
conduct." *Finuliar v. BAC Home Loans Servicing, L.P.*, No. C-11-02629 JCS, 2011 WL 4405659,
at *10 (N.D. Cal. Sept. 21, 2011). "'Fraudulent,' as used in the statute, does not refer to the
common law tort of fraud but only requires a showing members of the public are 'likely to be
deceived.'" *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994) (quoting *Bank of the
West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992)) (internal quotation marks omitted).

   "The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a
fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the
breach." *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1097 (N.D. Cal.
2007) (quoting *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1534 (2006)). "Directors and
officers of a corporation are in a fiduciary relationship with the corporation and shareholders, and
may be held liable for various kinds of breach of fiduciary duty." 5 Witkin, Cal. Proc. 5th Plead
§ 783(1) (2016). Similarly, "[m]ajority shareholders who control the corporation are under
fiduciary obligations to the minority, and may be held liable where they use the corporation to
obtain benefits not available to the minority." *Id.* § 783(2).

   Here, the defendants challenge Mr. Lowenthal's fraud-based UCL and breach of fiduciary duty
claims for lack of particularity; they do not challenge those claims' other elements.[81] Mr.
Lowenthal clarifies that both of these claims are premised on the alleged fraudulent transfer of

---

[81] Delgado Motion to Dismiss — ECF No 18 at 6–7; Chambers, Timm, QPMI Motion to Dismiss —
ECF No. 25 at 16–17; Quicklegal and Lawyers on Demand Motion to Dismiss — ECF No. 31 at 20–
21; Bluford Motion to Dismiss — ECF No. 39 at 20–21.

1  assets from Lawyers on Demand and Quicklegal to QPMI.[82] Although he does not assert a

2  standalone claim for fraudulent transfer, the court looks to that law to determine whether he has

3  adequately pled the existence of such fraud as the premise for his fiduciary duty and UCL claims.

4      There are two types of fraudulent transfer: actual and constructive. *See Kelleher v. Kelleher*,

5  No. C-13-cv-05450-MEJ, 2014 WL 94197, at *4–*5 (N.D. Cal. Jan. 9, 2014). An actual

6  fraudulent transfer is a transfer made with "actual intent to hinder, delay or defraud any creditor of

7  the debtor." *Optional Capital, Inc. v. Das Corp.*, 222 Cal. App. 4th 1388, 1401–02 (2014)

8  (quoting Cal. Civ. Code § 3439.04). There are two forms of constructive fraudulent transfer, both

9  of which focus on the transfer of assets without receiving "reasonably equivalent consideration" in

10  return. *See Screen Capital Int'l Corp. v. Library Asset Acquisition Co., Ltd.*, 510 B.R. 248, 256–57

11  (2014) (citing Cal. Civ. Code §§ 3439.04, 3439.05).

12      Claims for actual fraudulent transfer and fraud-based UCL claims trigger Rule 9(b)'s

13  heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)

14  (UCL); *Kelleher*, 2014 WL 94197 at *5 (fraudulent transfer). This means a plaintiff's

15  "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the

16  misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

17  (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Further, "a plaintiff must set forth

18  more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what

19  is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1097 (quoting

20  *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

21      Here, Mr. Lowenthal alleges that the defendants looted, dissolved, and supplanted Quicklegal

22  for the purpose of defrauding him — *i.e.* to deprive him of stock owed under the employment

23  agreement.[83] He alleges the "what" of the fraud: QPMI was formed as the "mere continuation,

24  reconstitution and/or alter ego of" Lawyers on Demand and Quicklegal to defraud him (*i.e.* avoid

25  paying his stock compensation).[84] He supports this assertion with particular facts indicating QPMI

---

82 *See* Opposition to Delgado's Motion — ECF No. 29 at 7.

83 FAC ¶¶ 48–49, 65.

84 *Id.* ¶¶ 34, 35, 48–49, 65.

is a "mere continuation": it engages in the same business, uses the same name, logo, social media, software, and has the same directors, shareholders, and officers.[85] He identifies the "when": QPMI was formed in September 2015, around which time the assets were plausibly transferred.[86] And the "how" of the fraud: he worked for four months under the assumption he would receive a 5%−7% interest in Lawyers on Demand or Quicklegal, but that stock now has very little value, he has yet to be paid, and this was caused by the fraudulent formation of QPMI.[87]

Missing from this list is the "where" and, more importantly, the "who." Mr. Lowenthal broadly asserts these claims are against "all defendants" (or, in the case of his fiduciary duty claims, against the officer, director, and shareholder defendants). This is a problem because broad undifferentiated allegations against multiple defendants are insufficient. But there are two distinct groups of defendants in the complaint: those about which Mr. Lowenthal makes particular allegations, and those about which he does not. The allegations against the former are sufficient; the allegations against the latter are not.

In the first group are Messrs. Bluford and Zal. These two defendants, both alleged officers, directors, and shareholders, were involved from the beginning to end of the employment relationship: both offered Mr. Lowenthal stock-based compensation, signed the agreement, and communicated with him after his employment ended.[88] More specifically, Mr. Bluford confirmed that Quicklegal would honor Mr. Lowenthal's agreement with Lawyers on Demand.[89] He also repudiated the agreement and told Mr. Lowenthal that his work had been unsatisfactory (despite never telling him that during the employment term).[90] These facts are particular in nature, evidence some involvement in Mr. Lowenthal's employment and non-payment, and plausibly

---

[85] *Id.* ¶ 34.

[86] *Id.*

[87] FAC ¶¶ 13–14, 26, 27, 31, 35, 36, 48–49, 65–66.

[88] *Id.* ¶¶ 13–14, 33, 35.

[89] *Id.* ¶ 28.

[90] *Id.* ¶ 34.

support his allegations that Mr. Bluford was involved in the above described fraudulent scheme. Mr. Lowenthal need not, even under Rule 9(b), prove his case in the complaint.

In the second group are defendants Delgado, Chambers, and Timm. Similar to Mr. Lowenthal's FLSA claim against these defendants, his breach of fiduciary duty and UCL claims rest on these defendants' mere statuses as shareholders, officers, and directors. Indeed, in his opposition to Mr. Delgado's motion, he asserts "the alleged scheme could not have been accomplished without the knowledge and participation of all defendants."[91] The court is cautious not to impose an impossible pleading burden; it understands that Mr. Lowenthal may not know the "content of the private conversations among the various defendants" and may not, for example, know if the shareholders, officers, or directors voted to make the transfer.[92] But without more, his allegations of fraud against these defendants are insufficient. There are no facts implicating them in his hiring, termination, or payment, or in the alleged transfer of assets to QPMI — each an apparent stage of the overall fraudulent scheme.

The court therefore dismisses Mr. Lowenthal's breach of fiduciary duty and fraud-based UCL claims against defendants Delgado, Chambers, and Timm. These claims survive to the extent asserted against Mr. Bluford.

### 3.  Mr. Zal's Motion to Quash

Mr. Zal moves to quash service of the summons and complaint.[93] He argues that substitute service was improper because it was left at QPMI's temporary office — a place that is not his office or "usual place of business."[94]

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with" Federal Rule of Civil Procedure 4. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). The sufficiency of service is thus determined by Rule 4, which is flexible and

---

[91] Opposition to Delgado Motion — ECF No. 29 at 8.

[92] *Id.*

[93] Zal's Motion to Quash — ECF No. 43.

[94] *See generally id.*

United States District Court
Northern District of California

liberally construed. *See Employee Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 998–99 (2007); *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). But, "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without 'substantial compliance with Rule 4.'" *Benny*, 799 F.2d at 492 (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)).

A defendant may challenge service of process under Rule 12(b)(5). Once challenged, the plaintiff has the burden to show that service was proper under Rule 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). A plaintiff may ordinarily satisfy that burden by producing the process service's return of service. *Emine Tech. Co., Ltd. v. Aten Int'l Co., Ltd.*, No. C 08-3122 PJH, 2008 WL 5000526, at *2 (N.D. Cal. Nov. 21, 2008). "That return is generally accepted as prima facie evidence that service was [a]ffected, and of the manner in which it was [a]ffected." *Id.* The defendant may rebut the return of service by showing that it is facially defective, or by producing admissible evidence. *Id.* The burden then shifts back the plaintiff to produce evidence that service was proper. *Id.* If the defendant's challenge is successful, the court has discretion to dismiss the complaint or quash the defective service and allow re-service. *Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976).

Under Rule 4(e)(1), a plaintiff may serve an individual defendant under any method permitted by the law of the state in which the district court is located or in which service is affected. In California, where this district court sits, "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person being served," then process may be left at the defendant's usual place of business with "a person apparently in charge" thereof, who is at least 18 years old, and who is informed of the contents. Cal. Civ. Proc. Code § 415.20(b). The plaintiff must then mail a copy of the summons and complaint to that same address. *Id.* Service is complete on the tenth day after mailing. *Id.* "Statutes governing substitute service," like section 415.20(b), will be "liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant." *Ellard v. Conway*, 94 Cal. App. 4th 540, 544 (2001) (quoting *Bein v. Brecthel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1392 (1992)) (internal quotations omitted).

The term "usual place of business" includes a defendant's "customary place of employment" and his or her "own business enterprise." Judicial Council Comment to Cal. Civ. Proc. Code § 415.20(b). "There is little case law explaining the phrase 'own business enterprise.'" *Commercial Judgment Recovery Fund 1 LLC v. A2Z Plating Co., Inc.*, No. SACV 11-0572 DOC (RNBx), 2011 WL 2941029, at *4 (C.D. Cal. July 15, 2011). Two similar cases are, however, instructive.

First, in *Commercial Judgment Recovery Fund 1 LLC v. A2Z Plating Co., Inc.*, service was properly affected at the defendant's "own business enterprise." 2011 WL 2941029 at *4. There, at the time of service, the defendant was the CEO of a company called Cambridge Inn. *Id.* at *4 n.3. (The defendant was also previously the CEO, sole director, and registered agent of Cambridge. *Id.*) The plaintiff completed service under section 415.20(b) by leaving process at Cambridge. *Id.* at *1. The defendant was "living out of the country when service occurred" and his activity at Cambridge was only "sporadic." *Id.* at *4. Nevertheless, because the defendant was Cambridge's CEO, service was proper at Cambridge — the defendant's "usual place of business." *Id.* (citing *Ellard*, 94 Cal. App. 4th at 544 (2001).

Second, in *J&J Sports Prod., Inc. v. Castellon*, service was similarly completed at the defendant's "own business enterprise." No. 15-cv-01941-WHO, 2015 WL 6089898, at *2 (N.D. Cal. Oct. 16, 2015). In *J&J*, the defendant was a director and vice president of a restaurant. *Id.* After three attempts at personal service, the plaintiff served the defendant by substitute service at the restaurant. *Id.* at *1–*2. The defendant "occasionally" worked at there, but challenged the service because "he worked full time for another business." *Id.* at *2. Yet service at the restaurant was proper because it was "appropriately considered [the defendant's] own business enterprise for purposes of service." *Id.*

Here, Mr. Lowenthal's service agent attempted personal service at Mr. Zal's home address five separate times between June 20 and 25.[95] The agent then attempted personal service two more times at 2110 K St., Sacramento, California, before eventually completing substitute service at that

---

[95] Proof of Service — ECF No. 12 at 3.

United States District Court
Northern District of California

address on a third attempt.[96] This demonstrates reasonable diligence at personal service under section 415.20(b). *See American Express Centurion Bank v. Zara*, 199 Cal. App. 4th 383, 389 (2011) ("Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as 'reasonable diligence.'"). The agent then left process with an "office manager," a person over 18 years old and apparently in charge, followed by mailing of the same.[97]

The real issue, like in *A2Z Plating* and *J&J*, is whether the 2110 K St. address is properly considered Mr. Zal's "usual place of business." Like the defendants in those cases, Mr. Zal argues that 2110 K St. — QPMI's temporary address at the time of service — is not and never was his usual place of business.[98] He declares that this address has "never been [his] office or business address" and he "ha[s] never at any time even set foot in that office."[99] To corroborate this, he submits the declaration of QPMI COO Russel Johnigan, who says Mr. Zal "never had an office of any kind at that location."[100] Mr. Johnigan also declares that he never saw Mr. Zal "visit that location or ever come inside," despite the fact that Johnigan "was almost always present [there] during business hours."[101] Mr. Zal also declares that he had never (prior to this case) met the office manager who accepted service (who says the same).[102] And Mr. Zal says he never received the papers left with the officer manager; he only discovered he was a named defendant through later email communications with opposing counsel.[103] Instead of 2110 K St., Mr. Zal declares that his home and business address is at 102 Mainsail Court, Folsom, California.[104]

Despite this evidence, as in *A2Z Plating* and *J&J*, service was proper at 2110 K St. because it is the location of Mr. Zal's "business enterprise." Mr. Zal is a member of QPMI's board of

---

[96] *Id.*

[97] *Id.* at 1.

[98] Zal's Motion to Quash — ECF No. 42.

[99] Zal Decl. — ECF No. 44, ¶ 8.

[100] Johnigan Decl. — ECF No. 61, ¶ 3.

[101] *Id.*

[102] Zal Decl. ¶ 9; Bunnell Decl. — ECF No. 62, ¶ 3.

[103] Zal Decl. ¶ 13.

[104] Zal. Decl. ¶ 2.

directors.[105] He is also the "resident agent for service of process for both [QPMI] and for Lawyers on Demand."[106] And he was vice president of Lawyers on Demand (some sort of predecessor to QPMI) at the time of Mr. Lowenthal's employment.[107] Like the defendants in *A2Z Plating* and *J&J*, then, Mr. Zal's status at QPMI — despite a lack of physical presence there — is sufficient to make QPMI's offices his "usual place of business" within the meaning of section 415.20(b).

In light of this conclusion, the liberal construction courts give Rule 4 and California substitute-service statutes where there is actual notice and substantial compliance, and the absence of any prejudice, service on Mr. Zal was proper and his motion is denied.

## CONCLUSION

The court denies in part and grants in part the defendants' motions. The court denies the defendants' motions to dismiss for lack of subject-matter jurisdiction. The court dismisses Mr. Lowenthal's claims against defendants Timm, Chambers, and Delgado but grants leave to amend. The other claims survive. Mr. Lowenthal may amend his complaint within 21 days of the date of this order.

The court denies Mr. Zal's motion to quash. Because Mr. Zal did not file a responsive motion, the court makes no finding as to the sufficiency of the complaint against him. Mr. Zal may file a responsive motion (if he chooses) within 14 days of the due date for Mr. Lowenthal's amended complaint (whether or not he files an amended complaint).

**IT IS SO ORDERED.**

Dated: September 28, 2016

_____
LAUREL BEELER
United States Magistrate Judge

---

[105] Supp. Zal. Decl. — ECF No. 60, ¶ 6.

[106] Zal. Decl. Ex. B.

[107] Reply to Motion to Quash — ECF No. 59 at 8.

United States District Court
Northern District of California